**CARUSO SMITH PICINI, P.C.**
Timothy R. Smith, Esq.
Attorney Id. 030781998
60 Route 46 East
Fairfield, NJ 07004
Tel. 973-667-6000
E-mail: tsmith@carusosmith.com

**PERI & STEWART, LLC**
Michael T. Stewart, Esq.
Attorney Id. 0205019185
271 Route 46 West, Suite C201
Fairfield, NJ 07004
Tel. 973-521-7426
E-mail: mstewart@peristewart.com

Attorneys for Plaintiff, Timothy H. Alexander, Esq.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| TIMOTHY H. ALEXANDER, ESQ. : | |
| : | |
| Plaintiff, : | |
| : | |
| vs. : | |
| : | |
| TOWNSHIP OF GUTTENBERG, : | COMPLAINT AND |
| GUTTENBERG POLICE DEPARTMENT : | JURY DEMAND |
| POLICE DIRECTOR JOEL MAGENHEIMER (RET.) : | |
| in his individual capacity; LT. JUAN BARRERA : | Civil Action |
| (RET.), in his individual capacity; SGT. JEFFREY : | |
| LUGO, in his individual capacity; PO ALEKSANDER : | Case No. |
| RAMADANOVIC, in his Individual capacity; : | |
| PO BYRON DOMINGUEZ, in his individual capacity; : | |
| LT. RAPHAEL MARTINEZ, in his individual capacity : | |
| JOHN DOES 1-10, and JANE DOES 1-10, : | |
| : | |
| Defendants. : | |

---

Plaintiff, Timothy H. Alexander, Esq., residing in the town of Estero and the State of

Florida, by and through his counsel, Caruso Smith Picini, P.C. and Peri & Stewart, LLC, as and

for his complaint against Defendants respectfully alleges as follows:

## PRELIMINARY STATEMENT

1. The case involves an outrageous abuse of authority, assault, malicious prosecution and false arrest in addition to unlawful search and seizure, First Amendment violations, and other federal and state violations against Alexander at the hands of the Guttenberg Police Department (hereafter "GPD") and due to actions of other defendants acting under the color of the law.

2. On August 16, 2019, at approximately 6:30am, Plaintiff Timothy H. Alexander, Esq. (hereinafter "Plaintiff" or "Alexander") was assaulted with excessive force while being unreasonably detained and falsely arrested by Sgt. Jeffrey Lugo, PO Aleksander Ramadanovic and PO Byron Dominguez (hereafter, respectively, "Lugo," "Ramadanovic," "Dominguez," individually, or collectively, the "defendant officers" or "Conspirators"). The false arrest occurred after a minor disagreement between Alexander and an unknown Uber driver had ended. The Uber driver was improperly parked in a fire zone and was handwashing his oversized SUV in front of Tower 2 at the Galaxy while all legal, safe guest parking spaces were available for use no more than ten (10) feet in either direction.

3. The argument between Alexander and the unidentified Uber driver lasted a very few minutes and ended uneventfully with the Uber driver being properly directed to park in a lawful safe space to handwash his truck and wait for his fare, and with Alexander attempting to return to his home at Tower 1 at the Galaxy Towers Condominium.

4. Upon his return to Tower 1 of the Galaxy, three Guttenberg Police officers (the defendant officers) arrived on scene and approached Alexander very aggressively. The defendant officers refused to allow Alexander to go home even after: (a) Alexander

advised them of the minor dispute and its uneventful resolution and (b) voluntarily providing his NJ driver license proving that he was resident of the Galaxy and (c) advising the defendant officers that he was a resident at the Galaxy for the last ten (10) years. Finally, after about fifteen (15) minutes of mistreatment, bullying, improper unreasonable detention, and humiliation, Alexander advised the officers that he was going home. Upon attempting to walk away from the defendant officers, Alexander was "clotheslined" from behind by one officer (believed to be Ramadanovic) and forcibly thrown down to the concrete sidewalk. All three defendant officers then jumped on Alexander, detained and handcuffed him, and put him in a GPD police car. Alexander was then transported to the Guttenberg retaining facility which is located at 6808 Park Avenue, Guttenberg, NJ 07093 (the "GPD Holding Facility"). Attached hereto as Exhibit "A" and made a part hereof is a true copy of a photograph of the three (3) defendant officers atop Alexander. No Use of Force Reports were filed at that time; later, on or about July 13, 2021, fabricated and back-dated Use of Force Reports were created by or on behalf of the defendant officers with the assistance and cooperation of Lt. Raphael Martinez, John Does 1-10, and/or Jane Does 1-10.

5.  During the four hours of the imprisonment that followed, these defendant officers once again handcuffed Alexander and forcibly took him from the Guttenberg Retaining Facility to the Hackensack Meridian Palisades Medical Center (hereinafter, the "Palisades Medical Center") where the defendant officers tried to have blood unlawfully taken from Alexander. Fortunately, the medical professionals at the Palisades Medical Center were not inclined to further violate or participate with defendant officers in the violation of the rights of Alexander and declined to take blood

without a warrant. Alexander was returned to the GPD Holding Facility within approximately one-half (½) hour after the unlawful attempt to have Mr. Alexander's blood extracted at the Palisades Medical Center without consent or a warrant.

6. Alexander was imprisoned for approximately four (4) hours in total before his release. At the time of his release, Alexander was told to and directed to take his paperwork. Alexander did as instructed, taking the plastic bag with his personal property (wallet, keys, etc.) in front of at least two officers who were positioned less than two (2) feet away from Alexander. Before leaving, Alexander actually stopped to shake hands with one officer per a GPD video of the incident.

7. Next, the GPD wrongfully and improperly obtained an arrest warrant for Alexander based upon demonstrably false claims of "theft" of sensitive police documents; Complaint W2019-169 was made by way of the demonstrably false probable cause affidavit of Dominguez to former North Bergen Municipal Judge Nino Falcone.

8. On August 19, 2019, as Alexander was finished walking his dog, he was again arrested in front of his building at Tower 1 of the Galaxy at approximately 7:00 a.m. Alexander was again held in the GPD Retaining Facility for approximately four (4) hours before being transported to Hudson County Correctional Center for two (2) days.

9. Months later, on October 16, 2019, Alexander was again charged by mail with claims of "harassment" by Lugo while Lugo was working a "side job" and as Alexander was walking his dog. Alexander was also charged with "Cyber-Harassment" by Lugo as a result of his accurately posting facts on social media.

10. In sum, Alexander was charged with a total of nine (9) criminal charges through cases bearing the docket numbers SC2019-168, SW 2019-169, and SC 2019-262.

11. After almost two (2) long years, these criminal charges were all dismissed on July 16, 2021.

12. At the time of the initial incident on August 16, 2019, the recording system of the GPD had been inoperable since at least June 24, 2019.

## JURISDICTION

13. This Court has jurisdiction over this action pursuant to at least 28 U.S.C. §§ 1331, 1343, 1367, as one or more causes of action arise under the United States Constitution and federal law. This Court has pendent or supplemental jurisdiction as it is either the District in which Defendants reside or it is the District in which the claims arose.

14. Plaintiff Timothy H. Alexander, Esq. ("Alexander" or "Plaintiff") at all times is/was a citizen of the United States. At all times pertinent to the allegations in the complaint, he was a resident of the State of New Jersey, Township of Guttenberg Currently, he is a resident of Estero, Florida.

15. Plaintiff Hand Delivered a Notice of Tort Claim form on October 14, 2019 (two days before the last group of charges were mailed to him on October 16, 2019, pursuant to 42 U.S.C. §1983 and N.J.S.A. 59:2-2, a true and complete copy of which is attached hereto as Exhibit "B" and made a part hereof.

## PARTIES

### Defendants – State Actors

16. Defendant Township of Guttenberg (hereinafter, "TOWNSHIP" or "GUTTENBERG") is a municipal entity duly incorporated and authorized under the laws of the State of New Jersey.

17. GUTTENBERG is authorized to maintain a police department (hereinafter, "GPD") which acts as its agent in law enforcement and for which it is ultimately responsible. GUTTENBERG assumes the risks incidental to the maintenance of its police force and the employment of its police officers and is charged with enforcement of all state and municipal laws within the TOWNSHIP. GUTTENBERG is a non-civil service town, believed to be the only non-civil service town in Hudson County NJ.

18. GUTTENBERG was at all relevant times responsible for policy making, hiring, supervision, training, control and retention of the individually named defendant officers.

19. GUTTENBERG is an entity capable of being sued pursuant to 42 U.S.C. §1983, which serves as a vehicle for those bringing a cause of action for violation of their constitutional rights under color of law.

20. Defendant Joel Magenheimer (hereinafter, "Magenheimer") was, at all relevant times, the police director of GPD and was responsible for implementation of all practices, policies and customs which resulted in the deprivation of plaintiff's constitutional rights. Magenheimer is sued in his individual capacity.

21. Magenheimer was at all relevant times a chief policy maker and supervisor for the GPD and the official responsible for the management, operation and oversight of the GPD including but not limited to hiring, operations, protocols, training, discipline, and/or supervision of employees of the GPD, including without limitation all individually named GPD officers and GPD John Does.

22.  Defendant Lt. Juan Barrera (hereinafter, "Barrera") was at all relevant times a superior officer, employee, and agent of the GPD. He too was a policy maker and responsible for implementation and enforcement of GPD policy similar to Magenheimer as noted in paragraph 21 above.  Barrera is sued in his individual capacity.

23. Defendant Lt. Raphael Martinez was at all relevant times a superior officer and supervisor and agent of GPD. He is sued in his individual capacity.

24. Defendant Sgt. Jeff Lugo (hereinafter, "Lugo") was at all relevant times an officer, employee, and agent of GPD. He is sued in his individual capacity.

25. Defendant PO Aleksander Ramadanovic (hereinafter, "Ramadanovic") was, at all relevant times, an officer, employee, and agent of GPD. He is sued in his individual capacity.

26. Defendant PO Byron Dominguez (hereinafter, "Dominguez") was, at all relevant times, an officer, employee, and agent of GPD. He is sued in his individual capacity.

27. Defendants JOHN DOES 1-10 and JANE DOES 1-10 were at all relevant times officers, lieutenants, chiefs, captains, supervisors, directors, prosecutors, investigators, training officers, principals, partners, employees, representatives, agents, officials or agencies of the Township and/or GPD whose actual identities are presently unknown, who were acting in their capacity as agents, servants, employees or officials of the TOWNSHIP and/or GPD, and whose actions assisted and/or contributed to the unlawful, unconstitutional and tortious conduct that resulted in plaintiff's August 16, 2019 and August 19, 2019 false arrest(s) and malicious prosecution(s) and assault among things and include but are not limited to persons

who were charged with training, supervising and disciplining defendant officers. All are sued in both individual and official capacities.

28. At all times relevant herein, Defendants Magenheimer, Barrera, Lugo, Ramadanovic, Dominguez and John Does 1-10 were acting under the color of state law in the course and scope of their duties and functions as agents, employees and officers of the Township and GPD in engaging in the conduct described herein.

29. At all times relevant herein, the individual defendants acted for and on behalf of the Township with the power and authority vested in them as officers, agents and employees of the Township and incident to the pursuit of their duties as officers, employees and agents of the Township.

## **FACTUAL ALLEGATIONS**

30. Alexander is a citizen of the United States and was at the time of the incidents complained of and for approximately ten years prior was a resident of Guttenberg and Galaxy.  At all times relevant to the within causes of action he was a resident of Tower One at the Galaxy.

31. Alexander's history in Guttenberg and at Galaxy has been wholly unremarkable.

32. From 1995 to the present Alexander has been a practicing civil litigation attorney admitted to the bar of the State of New Jersey and has engaged in *inter alia* civil rights cases against corrupt police departments.

33. On August 16, 2019, at approximately 6:30 a.m. Alexander had a brief and mostly uneventful argument with an unlawfully parked Uber driver handwashing his oversized SUV in a fire lane directly in front of Tower 2 (the "Uber driver"). The Uber driver had parked his vehicle in a fire lane. In addition to the fact that parking in

the fire lane was illegal, it was in violation of applicable rules and regulations of the Galaxy. Alexander inquired aloud as to why the Uber driver was not parked five feet away in either direction in a safe and legal spot to handwash his enormous truck.

34. Galaxy employee and security officer "Jeanette" was at the end of her night shift and told Alexander to mind his own business.

35. The Uber driver became very irate and began cursing Alexander to "mind your fu***** business" and the Uber driver aggressively approached Alexander and yelled at him.

36. Supervising security officer Navarro arrived and directed the Uber driver to park in a legitimate (and legal) parking spot. The Uber driver immediately complied with Mr. Navarro's direction.

37. Alexander returned from Tower 2 to his apartment at Tower 1.

38. Upon his return to Tower 1, three GPD vehicles arrived virtually within seconds of each other with Lugo, Ramadanovic and Dominguez.

39. Upon their arrival, the defendant officers were very aggressive and menacing to Alexander who was already familiar with Lugo, specifically, and GPD, generally, through his own work in civil rights law and specifically, through his relationship with the late Louis Zayas, Esq. – a prominent civil rights attorney out of North Bergen who had previously sued the GPD and Lugo specifically for past civil rights violations.

40. After approximately fifteen (15) humiliating minutes of "questioning" by defendant officers in front of his busy building about a minor incident that had ended peacefully

and without fanfare, the defendant officers continued to improperly harass and falsely detain and humiliate plaintiff.

41. Alexander voluntarily provided his New Jersey driver's license evidencing his residency at the Galaxy.

42. After about fifteen (15) minutes of bullying, intimidation and humiliation, and after voluntarily providing his New Jersey driver's license, the defendant officers continued their abuse.

43. At this point and after about fifteen (15) minutes of improper detention over a minor disagreement which had clearly ended prior to their arrival on the scene, and after being subject to excessive humiliation, bullying, intimidation, and improper detention and denial of liberty, and after having voluntarily provided his NJ Driver License to the defendant officers evidencing his residence at the Galaxy, Alexander finally told the defendant officers that if they had any further "investigation" they should go speak to the Uber driver, the security guards and/or concierge.

44. At this point, Alexander turned to walk into his home at Tower 1 and was blindsided and "clotheslined" from behind by an arm to his neck. He was then thrown onto the concrete sidewalk.

45. All three defendant officers then jumped on Alexander who did not touch or otherwise threaten any of these three fully armed defendant officers in any way.

46. Alexander did not struggle in any way either during or after recovering from the shock of being assaulted in such an unexpected and violent manner. Defendant officer, Lugo had his knee on Alexander's head, defendant officer, Ramadanovic had his knee on Alexander's back and defendant officer Dominguez straddled Alexander.

47. Alexander was then transported to GPD and imprisoned in the GPD Retaining Facility.

48. At one point during the four-hour imprisonment on Friday August 16, 2019, one or more of the defendant officers decided to have Alexander transported to the Palisades Medical Facility against his will (the gash on Alexander's left knee and abrasion on his head  caused by the defendant officers had already been addressed by North Bergen EMS) in an attempt to have his blood unlawfully taken in an effort to somehow have Alexander involuntarily committed to cover-up their unlawful and incredible actions. Such attempts failed as the medical staff at the Palisades Medical Facility wanted no part of the scheme, and in fact refused to participate in the defendant officers' attempt to improperly and unlawfully have Alexander's blood drawn. Alexander was in and out of the Palisades Medical Facility in approximately thirty (30) minutes.

49. Upon being released from the GPD Retaining Facility after this outrageous ordeal Alexander was directed to paperwork located on the desk in the GPD Retaining Facility, and to the plastic evidence bag containing his property.

50. In full view of at least two officers located not two feet away per GPD video, Alexander followed the instructions of GPD officers, took the paperwork and the plastic bag with his property, stopped to shake hands with one officer and left the GPD Retaining Facility.

51. On Monday August 19, 2019, at approximately 7 a.m., upon returning from walking his dog, Alexander was again arrested by GPD.

52. The three officers effectuating this second arrest were not the same three defendant officers from the initial August 16, 2019 assault.

53. The arrest warrant was obtained through a knowingly false warrant request by defendant, Dominguez.

54. After another three (3) plus hours in the GPD Retaining Facility on the morning of August 19, 2019, Alexander was let out of the cage located in the GPD Retaining Facility only to be re-handcuffed and transported to Hudson County Correctional Facility where he was incarcerated for the next two (2) days based upon the knowingly false probable cause statement.

55. Since these outrageous events of August 16, 2019 and August 19, 2019, Plaintiff has been repeatedly harassed and intimidated.  On October 16, 2019, (two days after Alexander Hand Delivered his Tort Claim Notice), defendant LUGO asserted another charge and caused the mailing of SC 2019-262, which among other things charged Alexander with harassment (pursuant to N.J.C.A. 2C:33-2(a)) for "glaring" at defendant LUGO while he was working a "side-job" and with Cyber-Harassment (pursuant to N.J.S.C. 2C:33-4.1A(2)) for an online social media posting and other charges.

## COUNT 1 – PATTERN AND PRACTICE ALLEGATIONS
## (MUNICIPAL AND GOVERNMENTAL LIABILITY)

56. Plaintiff incorporates the allegations set forth in the above paragraphs as if fully set forth herein.

57. Police Officers employed by defendant Guttenberg, including but

not limited to the individually named officers, have a long, systematic and

documented history of aggressive police practices including falsifying reports,

fabrication of evidence, cover-ups, sham Internal Affairs investigations, false arrests,

malicious prosecutions, conspiracy, retaliation, and use of excessive force against the

citizenry.

58. The Township through GPD developed, implemented, enforced, encouraged and

sanctioned a *de facto* policy, practice and/or custom of falsely arresting, maliciously

prosecuting and engaging in the use of illegal and excessive force on citizens and

cover-ups of these incidents; the township also has a *de facto* policy of allowing the

department to work without maintaining its recording system.

59. The unlawful arrest, assault, fabrication of false charges, malicious prosecution of

Alexander, and the subsequent cover up of the incident by the Township and GPD

was not an isolated or aberrational incident. It was the direct result of systemic

deficiencies in the training, supervision and discipline of the Township's officers,

including and especially but not limited to defendant officer Lugo that began long

before the illegal arrest, assault, fabrication of false charges and malicious

prosecution of Alexander and continues to this day.

60. Specifically, Guttenberg and GPD were on notice that there was a pervasive and

systemic pattern, custom and practice of conspiracy, false arrest, assault, unlawful

imprisonment and malicious prosecution within its police department.

61. Both before and after the August 16, 2019 and August 19, 2019 illegal arrest, assault,

fabricated charges, and malicious prosecution of plaintiff the Township was on notice

that there was a pervasive and systemic pattern, custom and practice of constitutional

violations including conspiracy, false arrest, unlawful imprisonment and malicious

prosecution and the use of excessive force within GPD.

62. Guttenberg and GPD are well known for their illegal and improper conduct. There

have been numerous incidents, complaints, and lawsuits alleging conspiracy,

excessive force, illegal searches and seizures, false arrest, falsifying reports, filing of

false charges, malicious prosecution, cover-ups and otherwise by Guttenberg and

GPD. Specifically, on August 14, 2013 a lawsuit was filed by Brian Dorador vs.

defendant Magenheimer, defendant Lugo, defendant Barrera, and others Docket No.

HUD-L-3857-13, which complaint was filed by the late Louis A. Zayas, Esq. alleging

abuse of process, false arrest, malicious prosecution, and civil rights violations. See

also DeLuca v. Guttenberg, Lugo et al. and see Rivera vs. Township of Guttenberg.

63. Only three (3) days before the August 16, 2019 unlawful arrest and assault and

fabricated charges against plaintiff there was an article reported in the New Jersey

Law Journal (08/13/19) regarding wide-ranging and long-standing ethics complaints

filed by the Advisory Committee on Judicial Conduct (ACJC) against Guttenberg

Municipal Judge Lila Munoz, JMC.

64. The pattern of misconduct continued by the defendant officers through their

fabrication of bogus Use of Force Reports prior to the termination of the criminal

charges against Alexander.

65. As a direct and proximate result of Defendants' conduct detailed above and

otherwise, Alexander sustained the damages herein above alleged and described.

## COUNT 2 – 42 U.S.C. § 1983 Color of Law

## (GPD, LUGO, DOMINGUEZ, RAMADANOVIC)

66. Alexander hereby incorporates all allegations set forth in the above paragraphs as if fully set forth here.

67. Defendants GPD and defendant officers, acting in their individual capacity as employees of GPD and in their official capacity both, and within the scope of their employment, fabricated charges and reports and maliciously pursued the prosecution of Alexander who was innocent of any wrongdoing.

68. Defendant officers engaged in abuse of process  and violations of Alexander's Fourth and Fourteenth Amendment rights when they falsely arrested, assaulted, fabricated charges and evidence, falsely charged and maliciously prosecuted and imprisoned Alexander without probable cause and in bad faith.

69. As a direct and proximate result of Defendants' conduct detailed above and otherwise, Alexander sustained the damages herein above alleged and described.

## COUNT 3 – 42 U.S.C. § 1985 CONSPIRACY

## (GPD, LUGO, DOMINGUEZ, RAMADANOVIC, and MARTINEZ)

70. Alexander hereby incorporates all allegations set forth in the above paragraphs as if fully set forth herein. Defendants, officers Lugo, Dominguez and Ramadanovic, GPD, and others of the John Does 1-10 defendants, and Jane Does 1-10 defendants under the color of the law conspired with each other, reached a mutual understanding, and acted to undertake a course of conduct to cover up the true nature of the assault and excessive force and the incident generally and to injure, oppress, threaten, intimidate and imprison Alexander in the free exercise and enjoyment of the rights

and privileges and equal protection of the law secured to him by the United States Constitution, including the right to be free from unlawful search, seizure, detention and arrest; the right to be free from unlawful imprisonment; the right to be free from malicious prosecution, and the right not to be deprived of his liberty without due process of law.

71. Defendants took numerous overt steps in furtherance of such conspiracy including, but not limited to, conspiring to fabricate and falsify documents and evidence that led to Alexander's malicious prosecution and conspired to present perjured testimony designed to secure his conviction.

72. Among the false statements included a false presentation of probable cause of "theft of sensitive police documents" which led to a fraudulent arrest warrant signed by now suspended North Bergen Municipal Court Judge Nino Falcone (which Judge was arrested on criminal sexual assault on or about August 26, 2019) and which caused Alexander to be incarcerated at the Hudson County Correctional Facility in Kearny, NJ for two days on August 19-20, 2019.

73. Also among the false documents includes the fraudulent back-dated Use of Force reports provided on July 13, 2021 (three days prior to the scheduled trial date of July 16, 2021) before all criminal charges were dismissed.

74. As a direct and proximate result of Defendants' conduct and abuse of authority detailed above and otherwise, Alexander sustained the damages herein above alleged and described.

## COUNT 4 – 42 U.S.C. § 1983 – SUPERVISOR LIABILITY – NEGLIGENT TRAINING

## (TOWNSHIP, MAGENHEIMER, MARTINEZ, and JOHN DOES

## SUPERVISORS/CHIEFS)

75. Alexander hereby incorporates all allegations set forth in the above paragraphs as if fully set forth herein.

76. Defendants Magenheimer, Barrera, Martinez and Lugo and certain of the John Does 1-10 defendants and Jane Does 1-10 defendants who were supervisors or chiefs at GPD (the "John Doe and Jane Doe Supervisors/Chiefs") were at all relevant times supervisory personnel in the Township, with oversight responsibility for defendants, officers Ramadanovic, Dominguez, and others. They were responsible for the training, instruction, supervision and discipline of defendant officers who violated Alexander's constitutional rights as described above and beyond.

77. Defendants failed to adequately train defendant officers to ensure they would not violate the civil rights of citizens, including Alexander's civil rights.

78. Upon information and belief at the time of the hiring of Ramadanovic, it was known to the Township and GPD that Ramadanovic had just recently been terminated as a "special police officer" in the Cliffside Park PD after Ramadanovic had been found to have assaulted an individual (for being gay) at a New Year's Eve Party along with another former "special" Cliffside Park PD officer also then-recently hired by Guttenberg.

79. Failure of the defendants the Township, Magenheimer and John and Jane Does' Supervisors/Chiefs to train, supervise and discipline defendant officers amounted to

gross negligence, deliberate indifference, reckless or intentional misconduct which directly caused the deprivations suffered by Alexander.

80. Defendant the Township and GPD, as employer of defendant officers, is responsible for the state and federal constitutional violations and other violations sustained by Alexander when, at all times relevant, defendant Officers' conduct was the result of the Township's deficient policy, custom and practice of inadequate screening, hiring, retaining, investigating, disciplining, training and supervising its employees, including the individually named defendant Officers.

81. As a direct result and proximate cause of Defendants' conduct and abuses of authority detailed above and beyond Alexander sustained the damages hereinabove alleged and described.

## COUNT 5 – 42 US § 1983 - NEGLIGENT HIRING/RETENTION

### (TOWNSHIP, GPD, MAGENHEIMER, BARRERA AND JOHN DOE AND JANE DOE SUPERVISORS/CHIEFS)

82. Alexander herein incorporates all allegations set forth in the above paragraphs as if fully set forth herein.

83. Defendant the Township and GPD is responsible for recruiting, hiring, training, retention and supervision of defendant officers.

84. Magenheimer and Barrera and Martinez were responsible for the firing and hiring, supervision, corrective or disciplinary actions, and training of all officers on all aspects of law enforcement, including proper investigative techniques and evaluation of what constitutes a proper determination of probable cause.

85. Defendants have/had a duty to properly ascertain their police officers and employees' fitness to become police officers before they were hired and while

employed, and to adequately train the officers in their employment to ensure, *inter alia*, that these officers did not violate the constitutional rights of citizens.

86. Upon information and belief, Defendant Township, Magenheimer, Barrera, Martinez and John Does' and Jane Does' Supervisors/Chiefs, failed to properly determine the fitness of defendant officers, particularly but not exclusively limited to Lugo, Ramadanovic and Dominguez, to be hired as police officers, investigators, supervisors, and to ensure that they would not violate citizens', including Alexander's, civil rights.

87. Upon information and belief defendants knew of or should have known of the propensities of Lugo and Ramadanovic, among others, and they should have known defendant officers were not qualified nor suited to act as police officers able to act under the color of the law and able to infringe so significantly upon the rights of citizens.

88. Defendants were aware of other incidents involving defendant officers, particularly but not limited to Lugo, Ramadanovic and Dominguez, that alerted them to unlawful conduct and propensity for unlawful conduct; Defendants failed to take reasonable steps to ensure defendant officers would act lawfully and appropriately and would not violate the constitutional rights of individuals such as Alexander.

89. Defendant Township/GPD is an entity within the meaning of 42 US § 1983 and may be held liable for its policies (or lack thereof) established through its chief officers and policy makers which caused the constitutional violations suffered by Alexander.

90. Plaintiff avers and believes that upon obtaining discovery additional defendants will be identified and shown to have acted with deliberate disregard (at best) for their responsibilities to supervise and/or train officers/supervising officers (Lugo and John Doe Supervisors 1-10) in the investigation of alleged criminal activity and in the evaluation and reliability of evidence used in the determination of probable cause.

91. Alexander avers that discovery will show defendant Township/GPD had an actual or *de facto* policy or custom of allowing or acquiescing to its officers fabricating and falsifying evidence to maliciously prosecute citizens like Alexander, of allowing its officers to rely upon flawed and fictitious evidence to prosecute citizens without adequate training in the investigation of crimes or determination of probable cause; the Township had a *de facto* policy which encouraged officers to conduct minimal investigations and to accept without further investigation or question the false, fabricated and manipulated evidence, regardless of the unreliability of such evidence.

92. Alexander avers and alleges that discovery will show defendants had an actual or *de facto* policy or custom of failing to investigate citizen complaints and/or conducting sham Internal Affairs investigations, failed to maintain Internal Affairs records of certain officers and supervisors (including but not limited to Magenheimer, Lugo, Ramadanovic, Dominguez and John Doe officers and supervisors) and failing to discipline officers and employees; and that as a direct result of said policies and/or customs Alexander was deprived of his constitutional rights to due process, his right to his freedom and liberty and right to be left alone, his right to enjoy and pursue and obtain safety and happiness, his right to equal protection under the law, his right to be

free from false arrest and malicious prosecution, his right to privacy, and his right to freedom of association.

## COUNT 6 – NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (ALL DEFENDANTS)

93. Alexander hereby incorporates all allegations set forth in the above paragraphs as if fully set forth herein.

94. When defendant officers unlawfully detained, seized, arrested, assaulted and imprisoned Alexander and lied about the true events that occurred, fabricated evidence, filed false charges, initiated malicious prosecution, misrepresented clear and convincing video evidence, and publicly humiliated and embarrassed and menaced and threatened Alexander, defendant officers acted intentionally or recklessly and with bad faith and deliberate disregard of a high degree of probability that emotional distress would and did follow.

95. Defendants' conduct was so egregious, extreme and outrageous in character and degree it went beyond all possible bounds of decency and is utterly intolerable in a civilized community whether a "civil service" town or not as Guttenberg, unfortunately, is not.

96. As a direct and proximate result of defendants' actions, Alexander has suffered and continues to suffer such severe and substantial emotional distress and mental harm, which no person could be expected to endure and Alexander has since and continues now to have regular counselling in these regards.

## COUNT 7 – NJSA 10:6-1-2 – NJ CIVIL RIGHTS ACT

### (ALL DEFENDANTS)

97. Alexander hereby incorporates all allegations set forth in the above paragraphs as if
    fully set forth herein.

98. Defendant officers and John Doe Supervisors/Chiefs and Jane Doe
    Supervisors/Chiefs, under the color of the law, statute, ordinance, reputation, custom
    and usage have deprived and caused Alexander to be subjected to the deprivations of
    rights, privileges, and immunities secured by the New Jersey Constitution and law of
    the State of New Jersey, including his right to liberty, his right to be secure as a
    person against unreasonable searches and seizures, his right to be free from assault
    and excessive use of force, his right to be free from malicious prosecution(s), his right
    to be free from unlawful detention, his right to be free from false arrest, his right to
    privacy, and his right to freedom of association secured to him by the New Jersey
    State Constitution.

99. Defendant officers/supervisors and John Doe defendants acting under the color of the
    law, intentionally deprived Alexander of his civil rights by, *inter alia*, illegally
    seizing and arresting him, assaulting him, fabricating evidence and filing false
    charges against him, failing to intervene to prevent the unlawful acts against him,
    imprisoning him, maliciously prosecuting him, and by failing to adequately hire,
    train, retain and supervise defendant officers.

100. Defendant the Township/GPD is liable for the violations of United States
     Constitution and violations of New Jersey State law by its servants, agents and
     employees when at all times relevant the defendant officers were acting within the

scope of their employment in furtherance of their duties under the color of federal, state, county and municipal laws.

101.   Defendants' acts were done in purposeful and knowing violation of Alexander's legal and constitutional rights and have caused Alexander physical, legal and economic injury, humiliation, mental pain and suffering and severe emotional distress.

102.   Defendants' deprivations of Alexander's civil rights violates the New Jersey Constitution and gives rise to Alexander's claims for redress under N.J.S.A. 10:6-1 et seq.

103.   Defendants, acting under the color of the law, deprived and interfered with the exercise and enjoyment of rights guaranteed to Alexander by the US and New Jersey Constitutions including, but not limited to:

a)   the right to enjoy life and liberty;

b)   the right to pursue and obtain safety and happiness;

c)   the right to due process of law;

d)   the right to equal protection of the law;

e)   the right to be secure from unreasonable searches and seizures;

f)   the right to be free from assault and excessive force and unlawful imprisonment and malicious prosecution;

g)   the right to any other natural and unalienable rights retained by the people;

h)   the right to privacy; and

i)   the right to be free from cruel and unjust punishment and unlawful treatment.

104.   As a direct and proximate result of defendants' misconduct and abuse of

authority and improper conduct detailed above and unlawful policies and

customs, Alexander sustained the damages herein alleged.

### COUNT 8 – PUNITIVE DAMAGES

### (MARTINEZ, LUGO, DOMINGUEZ, RAMADANOVIC, JOHN DOE SUPERVISOR/CHIEFS, JANE DOE SUPERVISOR/CHIEFS, and DOE SUPERVISORS/CHIEFS)

105.   Plaintiff hereby incorporates the allegations set forth in the above

paragraphs as if fully set forth herein.

106.   The acts of the defendant officers, John Doe Supervisor/Chiefs, Jane Doe

Supervisors/Chiefs, and policy makers set forth herein were willful, wanton,

intentional, malicious and oppressive, and entitle Plaintiff to an award of punitive

damages against defendant officers and individual Defendants.

WHEREFORE, plaintiff Alexander respectfully prays that this Court:

a)   Assume jurisdiction over this action;

b)   Award Plaintiff actual damages, expenses and other economic losses;

c)   Award general damages for injury, mental anguish, and emotional distress, in an

amount to be determined by the enlightened conscience of an impartial jury;

d)   Award punitive and exemplary damages against the defendants, including without

limitation, the individual defendant officers, to the extent permitted by law;

e)   Declare that defendants violated plaintiff's rights under the United States

Constitution;

f)   Declare that defendants violated plaintiff's rights under the New Jersey Constitution;

g) Award Attorney Fees, pursuant to 42 U.S.C. § 1988 and any other applicable

provision(s) of State and federal law; and,

h) Award such other relief as the Court deems just and proper.

### DESIGNATION OF TRIAL COUNSEL

PLEASE TAKE NOTICE that attorney Timothy R. Smith, Esq. is hereby named and designated as trial counsel in the above litigation on behalf of Plaintiff.

### JURY DEMAND

PLEASE TAKE NOTICE that Plaintiff hereby demands a trial by jury as to all issues.

### NOTICE OF UTILIZATION OF TIME-UNIT BASIS

PLEASE TAKE NOTICE Plaintiff intends to utilize the time-unit basis for calculating unliquidated damages in Plaintiff's closing statement to the jury and the Court.

### DEMAND FOR INSURANCE INFORMATION

PLEASE TAKE NOTICE Plaintiff demands all insurance policies in effect at the time of the incidents complained of in the within Complaint be produced.

**CARUSO SMITH PICINI, P.C.**
Attorneys for Plaintiff,
Timothy H. Alexander, Esq.

By: /s/ *Timothy R. Smith*
Timothy Smith, Esq.

**PERI & STEWART, LLC**
Attorneys for Plaintiff,
Timothy H. Alexander, Esq.

By: /s/ *Michael T. Stewart*
Michael T. Stewart, Esq.

Dated: August 9, 2021

# EXHIBIT A



# EXHIBIT B



P|S

PERI & STEWART
ATTORNEYS AT LAW  LLC

October 14, 2019

**HAND DELIVERY**
Town of Guttenberg
6808 Park Ave
Guttenberg, NJ 07093

**HAND DELIVERY**
Det. Sgt. Mark DePew
6808 Park Ave
Guttenberg, NJ 07093

RE:    **Alexander v Town of Guttenberg, Sgt. Jeff Lugo, PO Ramadanovic, PO Dominguez
TORT CLAIM NOTICE**

To Whom It May Concern:

1.  <u>Name and post office address of claimant(s):</u>

Timothy H. Alexander, Esq.
7000 Boulevard East, 42F
Guttenberg, NJ 07093

2.  <u>Post office address to which the person presenting claim desires notices to be sent:</u>

Timothy H. Alexander, Esq.            Timothy H. Alexander, Esq.
Peri & Stewart, LLC                   7000 Boulevard East, 42F
271 US 46 east Suite 201c             Guttenberg, NJ 07093
Fairfield, NJ 07004

3.  <u>Date, place, and other circumstances of the occurrence or transaction which gave rise
to claim asserted:</u>

On the morning of August 16, 2019 Timothy H. Alexander, Esq. was unlawfully assaulted and
falsely arrested with excessive force and falsely imprisoned by Sergeant Jeff Lupo, PO
Aleksander Ramadanovic and PO Byron Dominguez. This assault and false arrest occurred
directly in front of Alexander's home (where he has lived for approximately the last 10 years) at
7000 Boulevard East. Demonstrably false police reports were created in an effort to cover-up the
assault and to support the false arrest and false charges; and malicious prosecution commenced.
Lugo arranged to have Alexander taken to the hospital against his will in an unlawful attempt to
take blood from Alexander and in an attempt to have Alexander involuntarily committed against
his will.[1]

On the morning of August 19, 2019, Timothy H. Alexander, Esq. was again unlawfully arrested and falsely imprisoned directly as a result of a falsely obtained warrant issued by North Bergen Judge Nino Falcone[2]. The probable cause affidavit of PO Dominguez is demonstrably false.

At the time of that second false arrest Alexander was held in Guttenberg's jail for approximately four (4) hours until he was then transported to Hudson County Correctional Facility for the next two days.

  4.  General description of the injury/damage

See above. At the time of the assault Alexander's left knee was bloodied and injured (as of the date of this writing a scar remains on his knee), and Alexander's forehead and chin were bruised.

  Additional damages and injuries will be disclosed as determined.

  5.  The name or names of other public entities, employer or employees causing injury, damage or loss if known:

  Unknown

  6.  The amount claimed as of the date of the presentation of the claim, including the estimated amount of any prospective injury, damage or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of the computation of the amount claimed:

  The amount claimed as of this date is $3,000,000. However, the extent of the injuries is ongoing and will continue to be revealed and ascertained. Upon completion of discovery, a proper presentation of the claim will be further provided.

  If there are any supplemental forms you would like answered, please provide a copy of said forms to my office immediately.

Very truly yours,

Timothy H. Alexander, Esq.

cc:    Hudson County Prosecutor's Office
       Timothy R. Smith, Esq.
       Wolodymyr Tyshchenko, Esq.

[1] As of this writing Alexander has been charged $3500 in total due to the unlawful attempt to have Alexander involuntarily committed at Hackensack Medical Center Palisade Hospital.

[2] Nino Falcone, JMC is currently suspended as a result of his own arrest for criminal sexual assault dated September 12, 2019.